**ORAL ARGUMENT NOT YET SCHEDULED**

No. 26-5224

IN THE

# United States Court of Appeals
# for the District of Columbia Circuit

JOYCE BEATTY,

*Plaintiff-Appellee*,

v.

DONALD TRUMP, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia, No. 25-cv-4480-CRC
Hon. Christopher R. Cooper

## APPELLEE JOYCE BEATTY'S
## OPPOSITION TO A STAY PENDING APPEAL

NORMAN EISEN
STEPHEN JONAS
DAVID W. OGDEN
DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE
Suite 15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

NATHANIEL A.G. ZELINSKY
KYLE R. FREENY
ALEXANDER KRISTOFCAK
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

*Counsel for Plaintiff-Appellee Joyce Beatty*

June 22, 2026

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Plaintiff-Appellee Joyce Beatty submits this Certificate as to Parties, Rulings and Related Cases:

### A.    Parties and Amici

Joyce Beatty was the plaintiff in the district court and is the Appellee before this Court.  The defendants in the district court and the Appellants before this Court are:  Donald J. Trump, Richard Grenell, Jennifer Fischer, Sergio Gor, John Falconetti, Brian D. Ballard, Maria Bartiromo, Pamela Bondi, Mary Helen Bowers, Hannah F. Buchan, Robert Castellani, Elaine Chao, Pamella Roland Devos, Patricia Duggan, Emilia May Fanjul, Lynette Friess, Pamela Gross, Lee Greenwood, Kate Adamson Haselwood, Laura Ingraham, Michele Kessler, Dana Kraft, Mindy Levine, Lynda Lomangino, Barbara Long, Allison Lutnick, Douglas Manchester, Catherine B. Reynolds, Denise Saul, Dan Scavino, Cheri Summerall, Usha Vance, Susie Wiles, Andrea Wynn, Paolo Zampolli, Robert F. Kennedy, Jr., Marco Rubio, Linda McMahon, Mike Johnson, Sam Graves, Julia Letlow, Mike McCaul, John Thune, Shelley Moore Capito, Susan Collins, Trustees of the John F. Kennedy Center for the Performing Arts, and John F. Kennedy Center for the Performing Arts.

In the district court, the following *amici curiae* appeared: The Committee for the First Amendment, Mary Boyle, Guy Cecil, Gilbert R. Cisneros Jr., Bruce Cohen, Sylvia Davis White, Catherine Gledhill, Sonya Halpern, Sharon Hoffman, Barry

i

Karas, Shahid Khan, Robin Leeds, Amalia Perea Mahoney, Noah Mamet, Ronnie Planalp, Deborah Dozier Potter, Susan E. Rice, Diane Robertson, Rusty Rueff, Alexandra C. Stanton, Gary Sugarman, and Reginald Van Lee.

### B.    Rulings Under Review

The district court (Cooper, J.) issued a permanent injunction and an accompanying opinion on May 29, 2026.  That opinion is not yet reported, but is available at 2026 WL 1505646 and reproduced at Add.5-Add.98.

### C.    Related Cases

This case has not previously been before this Court or another district court.

June 22, 2026

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

*Counsel for Plaintiff-Appellee Joyce Beatty*

ii

# GLOSSARY

| | |
|---|---|
| Add. | Addendum to Appellants' Motion for a Stay Pending Appeal |
| Dkt. | District Court Docket Entry |
| Mot. | Appellants' Motion for a Stay Pending Appeal |
| Supp.Add. | Supplemental Addendum to Opposition |

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.................i

GLOSSARY ............................................................................................... iii

TABLE OF AUTHORITIES.........................................................................v

INTRODUCTION ........................................................................................1

STATEMENT .............................................................................................5

    A. Legal Background........................................................................5

    B. Factual Background ....................................................................6

    C. Procedural History .....................................................................8

ARGUMENT ...........................................................................................10

    I.    Appellants Fail To Make A Strong Showing Of Success On Appeal  10

    II.   Appellants Fail To Demonstrate Irreparable Harm .............................17

    III.  The Remaining Factors Strongly Disfavor A Stay..............................21

CONCLUSION .........................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

SUPPLEMENTAL ADDENDUM

## TABLE OF AUTHORITIES

**Cases**

*Am. Hosp. Ass'n v. Harris*,
  625 F.2d 1328 (7th Cir. 1980).................................................................19

*Beame v. Friends of the Earth*,
  434 U.S. 1310 (1977)..............................................................................18

*Bost v. Ill. State Bd. of Elections*,
  607 U.S. 71 (2026).........................................................................8, 11, 12

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005) ...................................................................19

*Citizens for Resp. & Ethics in Washington v. FEC,*
  904 F.3d 1014 (D.C. Cir. 2018) ..............................................................19

*Crane v. Hearn*,
  26 N.J. Eq. 378 (N.J. Ch. Ct. 1875)........................................................13

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
  772 F.2d 972 (D.C. Cir. 1985) ................................................................20

*Eastman v. Allard*,
  149 Mass. 154 (Mass. 1889)....................................................................13

*Elmendorf v. Lansing*,
  4 Johns. Ch. 562 (N.Y. Ch. Ct. 1820) .....................................................13

*Fund for Animals v. Frizzell*,
  530 F.2d 982 (D.C. Cir. 1975) ................................................................18

*Graphic Commc'ns Union v. Chi. Trib. Co.*,
  779 F.2d 13 (7th Cir. 1985).....................................................................19

*Hanson v. District of Columbia,*
  120 F.4th 223 (D.C. Cir. 2024) ...............................................................18

*In re NTE Conn., LLC*,
  26 F.4th 980 (D.C. Cir. 2022) ............................................................19–20

*KalshiEx LLC v. CFTC*,

    119 F.4th 58 (D.C. Cir. 2024) ...............................................................3, 10, 17

*Laroe v. Douglass*,

    13 N.J. Eq. 308 (N.J. Ch. Ct. 1861) ...............................................................13

*League of Women Voters of the U.S. v. Newby*,

    838 F.3d 1 (D.C. Cir. 2016) ...............................................................22

*Marshall v. Caldwell*,

    125 Mass. 435 (Mass. 1878)...............................................................13

*Morville v. Fowle*,

    144 Mass. 109 (Mass. 1887)...............................................................13

*Nken v. Holder*,

    556 U.S. 418 (2009)...............................................................2, 10, 11, 22

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,

    554 U.S. 269 (2008)...............................................................3, 11, 12

*Thole v. U.S. Bank N.A*,

    590 U.S. 538 (2020)...............................................................12

*TransUnion LLC v. Ramirez*,

    594 U.S. 413 (2021)...............................................................12

**Statutes**

20 U.S.C. § 76h(a)(1)...............................................................1, 5, 17

20 U.S.C. § 76h(a)(2)...............................................................5

20 U.S.C. § 76h(a)(2)(L)...............................................................5

20 U.S.C. § 76h(b) ...............................................................5

20 U.S.C. § 76i(c)(3)...............................................................17

20 U.S.C. § 76j(b)(1) ...............................................................1, 15

20 U.S.C. § 76j(b)(2) ...............................................................6

20 U.S.C. § 76j(b)(2)(A)...............................................................17

20 U.S.C. § 76*l*(b) ...............................................................5

20 U.S.C. § 76q...............................................................1, 5

Joint Resolution Providing for Renaming the National Cultural Center as the John F. Kennedy Center for Performing Arts,
Pub. L. No. 88-260, 78 Stat. 4 (1964).....................................................................5

**Restatements**

Restatement (First) of Trusts § 391 ......................................................................14

Restatement (Second) of Trusts § 224 .................................................................12

Restatement (Second) of Trusts § 391 .................................................................14

Restatement (Third) of Trusts § 76 ......................................................................12

Restatement (Third) of Trusts § 81 ......................................................................12

Restatement (Third) of Trusts § 94 ......................................................................14


**Other Authorities**

G. Bogert et al., *The Law of Trusts and Trustees*
(May 2025 Update)...............................................................................12, 14, 22

Jairus W. Perry, *A Treatise on the Law of Trusts and Trustees*
(4th ed. 1889) .................................................................................................13

James Hill, *A Practical Treatise on the Law Relating to Trustees*
(2nd ed. 1854) ................................................................................................13

James Hill, *A Practical Treatise on the Law Relating to Trustees, Their Powers, Duties, Privileges and Liabilities* (1st ed. 1845) ................................................13

Elizabeth Williamson & Julia Jacobs, *Kennedy Center Removes Trump's Name From Façade*, N.Y. TIMES (June 12, 2026),
https://www.nytimes.com/2026/06/12/arts/music/kennedy-center-trump-name.html [https://perma.cc/J5JA-H4Y7].......................................................18

## INTRODUCTION

There are difficult cases. This is not one of them. After President Kennedy's assassination, Congress established the John F. Kennedy Center for the Performing Arts as "a living memorial" to the late President. 20 U.S.C. § 76h(a)(1). By statute, the Center is "the sole memorial" to President Kennedy in the nation's capital. *Id.* § 76q. But in December 2025, President Trump's handpicked trustees voted to rename this sacred memorial after Donald Trump. The next day, workers installed President Trump's name above John F. Kennedy's on the building's iconic façade.

This was blatantly unlawful. As the district court explained in an exhaustive ninety-three-page opinion, "Congress gave the Kennedy Center its name, and only Congress can change it." Add.7. Congress specifically prohibited the installation of any "memorials or plaques in the nature of memorials" to anyone other than John F. Kennedy. *Id.* § 76j(b)(1). The law is clear: This institution honors its namesake—and no one else. The trustees' unlawful renaming of the Center was an unambiguous breach of their fiduciary duty.

The plaintiff in this case is Appellee Joyce Beatty. She serves as an *ex officio* trustee of the Kennedy Center. She objected to the Board's action but was denied the right to cast a dissenting vote or even speak at the Board's meeting. Beatty brought this lawsuit to challenge the unlawful renaming, protect the trust, and

1

compel her co-trustees, the defendants below and the Appellants here, to redress their breach of fiduciary duty.

On May 29, 2026, the district court ordered Appellants to restore the Kennedy Center's name within fourteen days. This two-week window provided Appellants ample opportunity to appeal and seek interim relief, should they have deemed doing so necessary. Appellants chose to forgo that path. Instead, Appellants began removing President Trump's name from both digital and physical spaces, including the website, social media, and the sides of the Kennedy Center's shuttle buses.

By June 11, 2026, the day before the deadline, all that remained was to restore the Kennedy Center's façade. But at the eleventh hour, Appellants appealed and sought a last-minute stay. This was a transparent effort to jam the Court and manufacture an emergency. On June 12, this Court declined to administratively stay the district court's order. As a result, in the early hours of June 13, Appellants erected a tarp to hide the letters on the building and—according to a sworn declaration—removed President Trump's name. As of today, the semi-permanent tarp remains in place, obscuring President Kennedy's name and the place where President Trump's used to be.

The Court should deny Appellants' frivolous stay motion. For starters, Appellants have no hope of success on appeal, let alone the "strong showing" of success, *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted), warranting the

2

"exceptional relief" of a stay pending appeal, *KalshiEx LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024).   Appellants' objection to Beatty's standing is meritless, as the district court thoroughly explained.  Indeed, this is a straightforward application of the law.  *See, e.g.*, *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) ("Trustees bring suits to benefit their trusts" in federal court.); *see id.* at 304 n.2 (Roberts, C.J., dissenting) (agreeing trustees possess Article III "standing to sue in federal court").  On the merits, Appellants' claim that "The Donald J. Trump and The John F. Kennedy Memorial Center for the Performing Arts" was a permissible "secondary name" for the Kennedy Center, not a renaming at all, Mot. 19, is, as the District Court observed, "too cute by half—and belied by the record," Add.56.  Indeed, if what happened to the Kennedy Center was "not a renaming, what is?" *Id.*

Appellants also fail to demonstrate irreparable harm, which is independently fatal to their motion.  *KalshiEx*, 119 F.4th at 64.  Appellants have suffered no harm from removing President Trump's name from the building's façade and elsewhere.  They likewise suffer no harm from maintaining the Center as the Kennedy Center while the appeal is pending.  In the unlikely event they prevail, Appellants can easily replace the "Trump Kennedy Center" name, at that later date, for a "*de minimis*" cost.  Add.61.  Indeed, Appellants' own conduct—complying until June 11, only to plead for a stay at the very last moment—betrays their total lack of urgency.

3

In a transparent attempt to manufacture harm, Appellants now assert they have modified the bylaws of "The Trump Kennedy Center for the Performing Arts Foundation" to mandate that the Kennedy Center return any funds should "the Center" "at any time remove the name of President Donald J. Trump." Mot. 2. This argument was never presented below, is forfeited on appeal, and cannot be the basis for a stay. It is also ludicrous. A trustee cannot create a poison pill to sabotage a trust should courts prevent him from defying the law. If the motion's representation is accurate, it would be a textbook example of a breach of fiduciary duty—and this self-inflicted harm certainly cannot be a legitimate basis for extraordinary relief pending appeal.

Finally, the remaining factors strongly disfavor a stay. If the Court stays the district court's order, Beatty will be frustrated in performing her obligations as a trustee, and the trust she is charged with protecting will suffer ongoing harm. Meanwhile, the public interest is never served by violations of the law. Indeed, it would send a particularly concerning message if the Court were to reward Appellants, who willfully flouted the statutes Congress passed; played chicken with the judicial system; now threaten to sabotage this sacred institution; and continue to obscure the Kennedy Center's façade in an act of petty defiance.

The motion should be denied.

4

**STATEMENT**

### A.     Legal Background

In 1964—approximately two months after President Kennedy's assassination—Congress enacted legislation renaming the National Cultural Center "the John F. Kennedy Center for the Performing Arts," and designating the institution as a living memorial to the fallen President. Pub. L. No. 88-260, 78 Stat. 4 (1964).

The Kennedy Center is governed by a Board composed of thirty-six general trustees appointed by the President, 20 U.S.C. § 76h(a)(2)(L), (b), and twenty-six *ex officio* trustees, *id.* § 76h(a)(2). Congress charged the Board with "all the usual powers and obligations of a trustee." *Id.* § 76*l*(b).

The Center's organic statute mandates that the Board "shall construct . . . a building to be designated as the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76i(a). The Board's duty "shall be to maintain and administer the John F. Kennedy Center for the Performing Arts" as "a living memorial to John Fitzgerald Kennedy." *Id.* § 76h(a)(1). By law, the Kennedy Center is "the sole national memorial to the late John Fitzgerald Kennedy" in the capital. *Id.* § 76q.

Congress required that the Kennedy Center be named for its namesake—and no one else. According to the statute, "no additional memorials or plaques in the nature of memorials shall be designated or installed in the public areas" of the

5

Kennedy Center. 20 U.S.C. § 76j(b)(1). The law permits only three narrow exceptions for: (i) "any plaque acknowledging a gift from a foreign country;" (ii) "any plaque on a theater chair or a theater box acknowledging the gift of such chair or box;" and (iii) "any inscription on the marble walls in the north or south galleries, the Hall of States, or the Hall of Nations acknowledging a major contribution." *Id.* § 76j(b)(2).

In total, the organic statute "refers to the institution as the 'John F. Kennedy Center for the Performing Arts' no fewer than two dozen times." Add.54.

### B.    Factual Background

For decades, the Kennedy Center has served as a sacred memorial and bipartisan home for the arts in the nation's capital. But shortly after his second inauguration, President Trump fired the Board's longtime chair and the Kennedy Center's professional management. President Trump appointed handpicked loyalists to the Board; was named the chair; and installed a former official from his first term with no prior arts management experience to run the Center. Add.13.

Appellant Joyce Beatty serves as an *ex officio* trustee of the Kennedy Center by congressional appointment. On December 18, 2025, the Board held a meeting at the house of a newly appointed trustee, the wife of a donor to President Trump's campaign. Add.14. Beatty attended virtually. *Id.*

6

As the meeting was ending, someone abruptly announced that the Board would be changing the Kennedy Center's name to honor President Trump. "Beatty tried to voice her opposition to the proposal, but found herself involuntarily muted." *Id*. The trustees purported to take a vote, which they claimed unanimously supported renaming. Add.15. The next day, workers installed Donald Trump's name above President Kennedy's on the Center's façade. *Id*. Promotional and marketing materials began referring to the institution as "The Trump Kennedy Center." *Id*.

The renaming caused the Center serious damage. Numerous artists canceled performances, and ticket sales plummeted. Add.15. Beatty promptly filed this lawsuit challenging the renaming. She explained that the renaming conflicted with the terms of the trust as established by statute, therefore violated her co-trustees' fiduciary obligations, and was also *ultra vires*.

On February 1, 2026, without any warning, President Trump announced that he had conducted a one-year review with numerous experts, who had "determined that the Trump Kennedy Center" would close its doors for two years to conduct renovations. Add.16.

In truth, no such review took place. Add.20 ("[T]he evidence of any such review is nil."). The shutdown appears designed to hide the damage renaming and other mismanagement has caused the institution. Beatty amended her lawsuit to additionally challenge the closure. Add.27.

### C.      Procedural History

On May 29, 2026, the district court issued two orders.  The first, which the government has not appealed, preliminarily enjoined the shutdown slated to occur on July 5, 2026.  The government appeals only the second order, which granted Beatty partial summary judgment as to renaming and voting.  Add.1-Add.4.  That order permanently enjoined Appellants from referring to the Center as named for anyone other than John F. Kennedy and required the removal of Trump's name within fourteen days.  Add.2-Add.3.

The district court issued an exhaustive ninety-three-page opinion.  Two aspects are relevant here.  The district court explained that, as a trustee, Beatty possesses Article III standing to bring this lawsuit to protect the Kennedy Center.  Indeed, Beatty's standing "is not nearly as 'complicated' as the Defendants make it out 'to be.' " Add.56 (quoting *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 73 (2026)).  As to the merits, the district court explained that the Kennedy Center cannot "be renamed absent Congressional authorization."  Add.53.  There "can be no confusion about the name Congress gave" the Center, and the organic statute "takes pains to ensure that the Kennedy Center's public spaces honor President Kennedy and President Kennedy alone."  Add.54.

In compliance with the court's order, Appellants began restoring the Kennedy Center's rightful name.  On June 4, 2026, the Kennedy Center directed all staff to

remove "all references to the Center being named for anyone other than John F. Kennedy." Dkt. 51-2 at 2. Appellants promptly corrected the Center's name on the website, on social media, and on the sides of the Center's shuttle buses.

But on June 11, 2026—the day before the deadline to comply—Appellants appealed and sought a stay pending appeal. The district court denied the stay, explaining that Appellants cannot show a strong likelihood of success on appeal. Supp.Add.1. The court also explained that Appellants cannot show irreparable harm absent a stay, which is separately fatal to their request. Indeed, by that late date, Appellants had already "taken substantial steps toward complying," which undermines "the notion that Defendants face irreparable harm in complying with the order in full." *Id.*

On June 12, 2026, the last day to restore the Kennedy Center's statutory name, Appellants filed a motion in this Court seeking an immediate administrative stay and a stay pending appeal. The Court denied an administrative stay and ordered briefing. In the early morning of June 13, Appellants removed President Trump's name from the Kennedy Center's façade.

Today, President Kennedy's name remains on the building. But the iconic letters are now obscured by a semi-permanent tarp, which appears to be Appellants' effort to frustrate the restoration of the status quo as it existed prior to the renaming.

This response follows.

9

**ARGUMENT**

The Court should deny the motion. "A stay" is never "a matter of right." *Nken*, 556 U.S. at 433 (citation omitted). It "is an intrusion into the ordinary processes of administration and judicial review." *Id*. at 427 (same). Appellants fall well short of the heavy burden needed for such "exceptional relief." *KalshiEx*, 119 F.4th at 63. Appellants fail to make the necessary strong showing of likely success on appeal. Appellants likewise cannot demonstrate irreparable harm. Either of these deficiencies alone dooms the motion.

The remaining two factors—injury to other parties, and the public interest—strongly counsel against a stay. It would send a concerning message to reward Appellants after their eleventh-hour shenanigans, when they now openly threaten to sabotage the Center, and while they simultaneously obscure the Center's façade in a somewhat farcical act of pique.

**I.     Appellants Fail To Make A Strong Showing Of Success On Appeal.**

Over ninety-three pages of analysis, the district court thoroughly explained why Beatty has Article III standing to challenge the renaming, Add.35-Add.48; why she possesses a statutory cause of action and may additionally bring an *ultra vires* claim, Add.49-Add.52, Add.58-Add.60; and why the purported renaming clearly violates the Kennedy Center's organic statute, Add.53-Add.58. The motion contests only standing and the district court's statutory interpretation. But Appellants

10

completely fail to engage with the district court's decision and utterly fail to make the "strong showing" of success needed for a stay. *Nken*, 556 U.S. at 426 (citation omitted).

As an initial matter, the Article III standing analysis "is not nearly as complicated as the" Appellants "make it out 'to be.' " Add.36 (quoting *Bost*, 607 U.S. at 73). As a trustee of the Kennedy Center, Beatty has a "personal stake" in this case. *Id*. at 76 (citation omitted). She is no "mere bystander[]" asserting a "generalized grievance[]." *Id*. at 78 (same). She is one of a handful of people charged with governing and protecting this sacred memorial. It would be bizarre—indeed, invite chaos in a host of contexts—if trustees like Beatty could *not* sue in federal court to protect their trusts.

Precedent confirms as much. Consider *Sprint*, a case which involved the Article III standing of assignees. In its analysis, the Supreme Court majority analogized assignees to "[t]rustees" who may "bring suits to benefit their trusts." *Sprint*, 554 U.S. at 287. Chief Justice Roberts dissented in *Sprint* because he disagreed about assignee standing in that case. But Chief Justice Roberts had no difficulty agreeing with the uncontroversial conclusion that *trustees* possess Article III "standing to sue in federal court." *Id*. at 304 n.2 (Roberts, J., dissenting). In his words, trustees have a "fiduciary obligation" toward their trusts, and a "trustee's

11

discharge of its legal obligation is an independent, personal benefit" that provides the trustee with Article III standing. *Id*.

The circumstance involved here—one trustee's power to sue "other fiduciaries" to halt their breach of fiduciary duty and to protect the trust—is blackletter stuff. *Thole v. U.S. Bank N.A*, 590 U.S. 538, 545 (2020). At common law, trustees like Beatty possess a fiduciary obligation to fulfill the trust's terms, protect the trust, and sue co-trustees to prevent them from engaging in breaches of fiduciary duties. Add.36 (citing Restatement (Third) of Trusts §§ 81, 76; Restatement (Second) of Trusts § 224; *Bogert's the Law of Trusts and Trustees* § 394 (May 2025 Update)).

At its core, Article III standing ask a "basic question: 'What's it to you?' " *Bost*, 607 U.S. at 76 (citation omitted). Beatty has a clear answer: She is a trustee charged with protecting this trust. The renaming prevented her from fulfilling the trust's terms and preserving the Kennedy Center as the sole national memorial to its namesake. Add.37. And if that "were not enough"—to be clear, it is—" 'history and tradition' confirm that Beatty's is the type of case that Article III empowers federal courts to consider." Add.45 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413,424 (2021)) (cleaned up). Meanwhile, yet more contemporary "case law confirm[s] that trustee-against-trustee suits do not raise serious Article III hang-ups." Add.48 n.17 (collecting cases).

Appellants do not engage with the district court's scholarly analysis. Instead, in a conclusory fashion, Appellants assert that Beatty suffered an "intangible harm" that is not "traditionally recognized as providing a basis for lawsuits in American courts." Mot. 18. But the district court painstakingly explained why that is wrong. "Historical treatises suggested that haling a scofflaw co-trustee into court" in these circumstances "was not just an option, but an obligation." Add.46 n.15 (citing, among other sources, James Hill, *A Practical Treatise on the Law Relating to Trustees, Their Powers, Duties, Privileges and Liabilities* 314 (1st ed. 1845); James Hill, *A Practical Treatise on the Law Relating to Trustees* 433 (2nd ed. 1854); Jairus W. Perry, *A Treatise on the Law of Trusts and Trustees* 530-531 (4th ed. 1889)). Indeed, for centuries, "courts have routinely considered suits brought by trustees against current or former co-trustees accused of having engaged in improper conduct or breach of fiduciary duty." Add.46 (citing, among other cases, *Elmendorf v. Lansing*, 4 Johns. Ch. 562 (N.Y. Ch. Ct. 1820); *Marshall v. Caldwell*, 125 Mass. 435 (Mass. 1878); *Laroe v. Douglass*, 13 N.J. Eq. 308, 1861 WL 1979 (N.J. Ch. Ct. 1861); *Crane v. Hearn*, 26 N.J. Eq. 378 (N.J. Ch. Ct. 1875); *Morville v. Fowle*, 144 Mass. 109 (Mass. 1887); *Eastman v. Allard*, 149 Mass. 154 (Mass. 1889)).

Appellants ultimately retreat and acknowledge that "private trustees" would have Article III standing. Mot. 18. But Appellants assert that trustees of a "charitable federal trust" cannot sue in federal court. *Id*. This is nonsense.

13

A " 'charitable trustee has the same duty as a private trustee to administer the trust according to its terms and applicable law.' " Add.43 (quoting *Bogert's Law of Trusts* § 394). Thus, the fact that the Kennedy Center is a charitable trust, rather than a private trust, makes no difference. Nor does it matter whether state or federal law establishes a charity.

Appellants are likewise wrong to suggest that "the sovereign is—at common law—the sole entity responsible for enforcing the terms of charitable trusts." Mot. 19. At common law, *either* the trustee of a charitable trust *or* the government may sue to enforce the terms of a charitable trust. *See, e.g.*, Restatement (First) of Trusts § 391; Restatement (Second) of Trusts § 391; Restatement (Third) of Trusts § 94. The state "serves as a potential surrogate" when the trustees fail to act. Add.52 n.20 (citation omitted). The state is thus a "*supplement* to, rather than a *replacement* for, the trustees"—who have an obligation to sue and protect a charitable trust. Add.52 n.20 (same).

On the merits of the renaming, Appellants fare no better. By law, the Kennedy Center is "designated" for "John F. Kennedy" and no one else. 20 U.S.C. § 76i(a). The organic statute "refers to the institution as the 'John F. Kennedy Center for the Performing Arts' no fewer than two dozen times." Add.54. Moreover, Congress expressly prohibited *any* "memorials or plaques in the nature of memorials" to

14

anyone other than John F. Kennedy, with extremely narrow exceptions—none of which apply here. *Id*. § 76j(b)(1).

Appellants suggest that their renaming, which they festooned across the façade, placing President Trump's name above President Kennedy's, was merely adopting "a secondary name." This is facetious. According to the undisputed facts, the Board "voted" to "*rename* the Kennedy Center to the Trump-Kennedy Center." Add.56 (citation omitted). And not only did President Trump's name appear on the building's façade—it appeared on the website, emails, letterhead, logos, and elsewhere. *Id*. This was not an "innocuous nicknaming," for example, "calling the Federal National Mortgage Association 'Fannie Mae.' " *Id*. "The 'Trump Kennedy Center' label add[ed] an entirely new name to the Center's formal title and relegate[d] President Kennedy's name to second place." *Id*. As the district court said, "[i]f that is not a renaming, what is?" *Id*.

Indeed, Appellants' motion repeatedly acknowledges that the "Trump Kennedy Center" name was a *new name* for the institution, not a secondary name. Mot. 1 ("[I]t does not make sense to alter the Center's name"); *id*. at 2 (claiming bylaws require "the name of the Center" to remain "unchanged"); *id*. at 3 (referring to "the name change"); *id*. at 15 ("[R]equiring a name change now, only to potentially revert back to the current name after appeal, would be incredibly

confusing for the public."). Appellants' inability to keep their own story straight says it all: the "secondary name" theory is a farce.

That is enough to deny a stay. But in addition, the renaming violates the express statutory prohibition on "memorials or plaques in the nature of memorials." 20 U.S.C. § 76j(b)(1). Appellants' claim (Mot. 21) that they complied with this bar because the renaming supposedly did not "*memorialize*" President Trump is likewise meritless. For one, the "lettering" on the building's façade "literally read[]: 'The Donald J. Trump and John F. Kennedy *Memorial* Center for the Performing Arts.' " Add.57. For another, the renaming *was* clearly an effort to "help people remember some person" and "reproduce past impressions." Mot. 21 (quotation marks omitted). As the district court explained, the record made clear the Board intended the renaming "to honor President Trump's" " 'past' work" in leading the Kennedy Center over the months prior to December 2025. Add.57-Add.58; *see* Mot. 9 (renaming honored President Trump's investment of time).

Moreover, if there were any doubt, "Congress has not just banned public 'memorials' at the site, but 'plaques *in the nature of* memorials.' " Add.57 (emphasis original) (quoting 20 U.S.C. § 76j(b)(1)). This sweeping statutory prohibition encompasses Appellants' effort to rename the Center. Surrounding context confirms the broad scope of the prohibition on memorials. Immediately after outlining the prohibition, the statute permits narrow exceptions, such as for a "plaque

16

acknowledging a gift from a foreign country." 20 U.S.C. § 76j(b)(2)(A). The carve-out would be entirely unnecessary if the prohibition were as narrow as Appellants suggest.

Appellants likewise take the wrong lesson from the fact that—when Congress authorized an expansion project at the Kennedy Center—it banned *all* "acknowledgements" on the project's exterior but permitted acknowledgments in the interior so long as they conformed with the longstanding ban on memorials. 20 U.S.C. § 76i(c)(3). As the district court explained, this provision reinforces, rather than undermines, the conclusion that Congress was extremely "wary of diluting the power of the public dedication to the slain president." Add.55. Indeed, that provision and the entire structure of the statute make clear that the Kennedy Center's *raison d'être* is to serve as "a living memorial" to the late President. 20 U.S.C. § 76h(a)(1). The statute would be all too easily frustrated if the Board could rename the institution after anyone else—including additional individuals or even corporate sponsors—and demote John F. Kennedy to last place in a long and expanding list.

## II.     Appellants Fail To Demonstrate Irreparable Harm.

The Court can deny a stay for a second and independent reason: Appellants cannot show irreparable harm. *See KalshiEx*, 119 F.4th at 64 ("[A] showing of irreparable harm is a necessary prerequisite for a stay."). Appellants will suffer no harm in complying with the district court's order while the appeal proceeds.

17

Restoring the Kennedy Center's true name required "de minimis resources," and similarly costs nothing to maintain. Supp.Add.1. In fact, according to public reporting, workers were even able to remove the letters from the building's façade *by hand*, without power tools. *See* Elizabeth Williamson & Julia Jacobs, *Kennedy Center Removes Trump's Name From Façade*, N.Y. TIMES (June 12, 2026), https://www.nytimes.com/2026/06/12/arts/music/kennedy-center-trump-name.html [https://perma.cc/J5JA-H4Y7]. Moreover, should Appellants prevail on appeal, they can just as easily restore President Trump's name—without difficulty.

Appellant's "lack of diligence" sharply "undercuts" any "claims of irreparable harm." *Hanson v. District of Columbia*, 120 F.4th 223, 246 (D.C. Cir. 2024) (per curiam). Until their eleventh-hour stay request, Appellants had willingly "taken substantial steps toward complying with the Court's May 29 permanent injunction order on renaming." Supp.Add.1. "These efforts" sharply "undermine the notion that" they "face[d] irreparable harm in complying with the order in full." *Id.*; *see also, e.g.*, *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers) ("The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm."); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (per curiam) ("Our conclusion that an injunction should not issue is bolstered by the delay of the appellants in seeking one.").

Appellants do not dispute that the costs of compliance were *de minimis*. Instead, they argue that *any* "amount of time and money spent"—no matter how minor—constitutes irreparable injury, because the losing party "will never be able to recover it." Mot. 14. This theory withers under gentle scrutiny. Irreparable injuries must be "certain and great," and "actual and not theoretical." *Citizens for Resp. & Ethics in Washington v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam) (citation omitted). After all, a stay is the exception, not the rule. And due to their own delay, Appellants have in any event already spent the amounts required to comply. A stay would not save them any future effort.

Under Appellants' logic a party could *always* claim "irreparable harm," *Graphic Commc'ns Union v. Chi. Trib. Co.*, 779 F.2d 13, 15 (7th Cir. 1985) (Posner, J.), simply by pointing to trivial "time" lost following an injunction, Mot. 14. This would effectively entail a finding of irreparable harm in *every* case. The Court should decline to accept this argument, which would necessitate unwarranted stays in countless appeals. *Cf. Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005) ("[O]rdinary compliance costs are typically insufficient to constitute irreparable harm."); *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("[I]njury resulting from attempted compliance . . . is not irreparable harm.").

Nor is this the extremely "unusual" case in which a stay might be necessary to prevent the irreparable loss of "very significant future revenues." *In re NTE*

19

*Conn., LLC*, 26 F.4th 980, 991 (D.C. Cir. 2022).  Appellants assert (Mot. 14) that "removal of President Trump's name threatens to impede the Center's fundraising efforts."  But below, Appellants presented not a single shred of concrete evidence to substantiate this assertion.  Instead, the only evidence in the record confirms that the use of the name "Trump Kennedy Center" has *negatively* impacted the institution's fiscal health.  *See* Add.61 n.23.

Appellants point only (Mot. 14) to a conclusory declaration from the Center's new executive director, which Appellants submitted weeks after summary judgment briefing closed, in a last-ditch effort to forestall a negative ruling.  But the district court denied Appellant's motion to submit that declaration because of the "unjustified delay in" "filing."  Add.62 n.24.  The declaration is therefore not in the record on appeal.  Regardless, as the Court explained, the declaration's assertions lacked "a factual basis," were "grounded on" "unsupported opinion alone," and contained "no proof that current or future donations hinge on President Trump's name being on the building."  *Id.*  Such rank speculation is not the kind of concrete evidence required to demonstrate irreparable harm and receive a stay.  *Cf. Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985) (per curiam).

Finally, the Court should dismiss Appellants' preposterous argument that they deserve emergency protection from this Court because they have injected a poison pill into the bylaws of "The Trump Kennedy Center for the Performing Arts

Foundation." Mot. 2. A trustee cannot demand the extraordinary remedy of a stay pending appeal by threatening to voluntarily harm the trust—and breaching his fiduciary duty—if he does not get his way. Regardless, Appellants forfeited this argument by never raising it below, it is unclear what the "Foundation" is, and it is likewise uncertain whether such bylaws exist.

### III.     The Remaining Factors Strongly Disfavor A Stay.

The remaining two stay factors—the harm to the other parties, and the public interest—cut sharply in Beatty's favor.

*First*, "Beatty's inability to administer the trust in accordance with its governing statute is an irreparable injury." Add.61. The renaming also caused considerable "damage" "to the trust *res* that Beatty is charged with protecting." Add.61 n.23. "Following the renaming, many artists canceled upcoming performances," and ticket sales "experienced a precipitous drop as compared to prior years, as did viewership of the Kennedy Center Honors broadcast which took place a few days after the renaming." *Id*. (cleaned up).

In this Court, but not in their stay motion below, Defendants argue that Beatty suffered no real harm and instead is akin to a member of a "democratic body" which "takes an action with which she disagrees." Mot. 16. This forfeited argument is not properly before the Court. Regardless, it is wrong. Beatty is not seeking to hale co-trustees into court for a routine disagreement that falls within the zone of

reasonableness. Beatty instead seeks to halt "serious breaches of trust"—clear violations of the trust's terms—which the law requires Beatty "to prevent" and "to redress." *Bogert's The Law of Trusts and Trustees* § 584.[1]

*Second*, the public interest would be greatly harmed by a stay. The public is *never* served by violations of the law. Add.62 (citing *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). The Court can, and should, reject out of hand Appellants' rather silly suggestion that enforcing the law would be "incredibly confusing for the public." Mot. 15.

Finally, Appellants' litigation conduct—jamming the Court with a last-minute stay—militates against awarding them special dispensation from the ordinary judicial process. *See Nken*, 556 U.S. at 433. It would send a particularly concerning message to reward Appellants after their gamesmanship, after their poison-pill gambit, and while they are still hanging a tarp over the Kennedy Center's restored façade in petulant defiance.[2]

---

[1] Appellants' argument that Beatty "long since discharged" her obligation, Mot. 15, is wrong for all the reasons explained by the district court, Add.38-Add.39.

[2] The motion makes passing (and inaccurate) references to the district court's separate preliminary injunction order halting the unlawful shutdown. Appellants appealed only the summary judgment order, never sought a stay with respect to the shutdown order below, and the *Nken* factors would not warrant a stay in any event. *See* Dkt. 54. Appellants also make no arguments regarding the portion of the district court's injunction securing Beatty's voting rights. For that reason, and because the *Nken* factors do not support a stay, the Court should also not stay the portion of the summary judgment order regarding voting rights.

## CONCLUSION

For the forgoing reasons, the motion for a stay should be denied.

June 22, 2026                          Respectfully submitted,

                                       /s/ Nathaniel A.G. Zelinsky

NORMAN EISEN                           NATHANIEL A.G. ZELINSKY
STEPHEN JONAS                          KYLE R. FREENY
DAVID W. OGDEN                         ALEXANDER KRISTOFCAK
DEMOCRACY DEFENDERS ACTION             WASHINGTON LITIGATION GROUP
600 Pennsylvania Avenue SE             1717 K Street, NW, Suite 1120
Suite 15180                            Washington, D.C. 20006
Washington, D.C. 20003                 202-521-8750
202-594-9958                           nzelinsky@washingtonlitigationgroup.org
norman@democracydefenders.org

*Counsel for Plaintiff-Appellee Joyce Beatty*

23

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), I certify that this opposition to an administrative stay contains 5,179 words. This document also complies with the requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared using Microsoft word 14-point Times New Roman, a proportionally spaced font.

June 22, 2026            /s/ Nathaniel A.G. Zelinsky
                                  WASHINGTON LITIGATION GROUP
                                  1717 K Street, NW, Suite 1120
                                  Washington, D.C. 20006
                                  202-521-8750
                                  nzelinsky@washingtonlitigationgroup.org

                                  *Counsel for Plaintiff-Appellee Joyce Beatty*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 22, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  All counsel in this case are registered CM/ECF users and will be served by the appellate CM/ECF.

June 22, 2026

/s/ Nathaniel A.G. Zelinsky
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

*Counsel for Plaintiff-Appellee Joyce Beatty*

# SUPPLEMENTAL ADDENDUM

District Court minute order denying stay ........................................ Supp.Add.1

USCA Case #26-5224      Document #2179755      Filed: 06/22/2026      Page 35 of 35

| | | |
|---|---|---|
| 06/11/2026 | 55 | MOTION to Stay *Permanent Injunction Pending Appeal* by BRIAN D. BALLARD, MARIA BARTIROMO, PAMELA J. BONDI, MARY HELEN BOWERS, HANNAH F. BUCHAN, SHELLEY MOORE CAPITO, ROBERT CASTELLANI, ELAINE CHAO, SUSAN COLLINS, PAMELLA ROLAND DEVOS, PATRICIA DUGGAN, JOHN FALCONETTI, EMILIA MAY FANJUL, JENNIFER FISCHER, LYNETTE FRIESS, SERGIO GOR, SAM GRAVES, LEE GREENWOOD, RICHARD GRENELL, PAMELA GROSS, KATE ADAMSON HASELWOOD, LAURA INGRAHAM, JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS, MIKE JOHNSON, ROBERT F. KENNEDY, JR, MICHELE KESSLER, DANA KRAFT, JULIA LETLOW, MINDY LEVINE, LYNDA LOMANGINO, BARBARA LONG, ALLISON LUTNICK, DOUGLAS MANCHESTER, MIKE MCCAUL, LINDA MCMAHON, CATHERINE B. REYNOLDS, MARCO A. RUBIO, DENISE SAUL, DAN SCAVINO, CHERI SUMMERALL, JOHN THUNE, DONALD J. TRUMP, TRUSTEES OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS, USHA VANCE, SUSIE WILES, ANDREA WYNN, PAOLO ZAMPOLLI. (Attachments: # 1 Text of Proposed Order) (Mayers, Brantley) (Entered: 06/11/2026) |
| 06/12/2026 | 56 | Memorandum in opposition to re 55 MOTION to Stay *Permanent Injunction Pending Appeal* filed by JOYCE BEATTY. (Zelinsky, Nathaniel) (Entered: 06/12/2026) |
| 06/12/2026 | 57 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 54 Notice of Appeal to DC Circuit Court. (zjm) (Entered: 06/12/2026) |
| 06/12/2026 | | MINUTE ORDER: Defendants' 55 Motion for a Stay of Permanent Injunction Pending Appeal is hereby DENIED. "A stay pending appeal is an extraordinary remedy" and may only be granted if the traditional stay factors are satisfied. KalshiEX LLC v. CFTC, 119 F.4th 58, 63 (D.C. Cir. 2024) (cleaned up). Defendants have not carried their burden to establish that a stay of the Court's May 29, 2026 permanent injunction concerning the Kennedy Center's renaming is warranted pending an appeal of the underlying ruling to the D.C. Circuit. Most notably, for the detailed reasons laid out in the Court's ruling, Defendants have not "made a strong showing that [they] are likely to succeed on the merits" of any appeal. Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). Nor have Defendants demonstrated that they "will be irreparably injured absent a stay," id. (quoting Hilton, 481 U.S. at 776), given both the de minimis resources that would be required to restore the Center's current name in the event of a successful appeal and the lack of record evidence linking increased donations to the current name. Further, Defendants have apparently taken substantial steps toward complying with the Court's May 29 permanent injunction order on renaming. See Mot. for Misc. Relief, ECF No. 51, Ex. A (June 4, 2026 memorandum from the Kennedy Center's Office of General Counsel directing staff to comply with the Court's permanent injunction on renaming). These efforts undermine the notion that Defendants face irreparable harm in complying with the order in full. The failure to demonstrate irreparable harm is "fatal" to a movant's stay request, KalshiEx, 119 F.4th at 64, as is the failure to show a likelihood of success on the merits. What's more, issuance of a stay pending appeal would not be in the public interest, which is rarely served by the "perpetuation" of "unlawful" governmental action. League of Women Voters of the U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016). So Ordered. Signed by Judge Christopher R. Cooper on 6/12/2026. (lccrc3) (Entered: 06/12/2026) |
| 06/12/2026 | 58 | MOTION for Extension of Time to *File Notice of Compliance until 12 PM on June 13, 2026* by BRIAN D. BALLARD, MARIA BARTIROMO, PAMELA J. BONDI, MARY HELEN BOWERS, HANNAH F. BUCHAN, SHELLEY MOORE CAPITO, ROBERT CASTELLANI, ELAINE CHAO, SUSAN COLLINS, PAMELLA ROLAND DEVOS, |

Supp.Add.001