**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 26-5224**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

JOYCE BEATTY,
Plaintiff-Appellee,

v.

DONALD J. TRUMP, *et al.*,
Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia

---

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY
PENDING APPEAL**

---

BRETT A. SHUMATE
*Assistant Attorney General*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3301*

---

**INTRODUCTION**

Without the name "Trump" on the Building, the Center's fundraising will come to a halt and all monies raised or committed would be obligated to be returned, refunded, or terminated per the Bylaws of The Trump Kennedy Center for the Performing Arts Foundation. Those Bylaws provide that if the "name of President Donald J. Trump" is removed "from its filings, marketing branding, façade, or any other affiliated location" the gifts must be returned. Many donors and companies, who have given, or will be giving, millions of dollars to the Center were only willing to do so with the name "Trump" on the Building. No one else other than President Trump would be in the position of both rebuilding the Building, and raising the money for its operation. President Trump raised $258 million from Congress and hundreds of millions more in pledges and donations from Patriotic private donors to rebuild and restore the Center. In addition, the President's tremendous construction abilities would fix the Building and restore it as the crown jewel of Washington, D.C. and the envy of the World. Yet, the district court enjoined the Board's vote to recognize the President's tremendous contributions. The financial harms caused by the injunction will never be recovered, and the hundreds of millions in gifts will have to be immediately returned, or not received by the Center. A stay should therefore issue to protect the Center from financial ruin.

The premier cultural and entertainment institution in Washington D.C., is at an inflection point. After decades of mismanagement and neglect, the Center has fallen into a dangerous state of disrepair—structurally unsound, fundamentally unsafe, and embarrassing to the Nation's capital. But President Trump refused to allow the Center to collapse. He restored the Center's financial future and donated his time, energy, and unparallelled Construction talents to save the Center. In recognition of these investments and his success in saving the declining facility, the Board voted overwhelmingly to recognize the President by naming the Center the "Donald J. Trump and John F. Kennedy Memorial Center for the Performing Arts."

In this action, however, an *ex officio* trustee sued her fellow trustees of the Board alleging, among other things, that this resolution and its implementation constituted a breach of fiduciary duty. In actuality, the Board vote represented a saving of the Center, which, if this renaming does not happen, would go into financial and structural collapse. Despite all of this, the district court ruled against the Board, and granted a permanent injunction, requiring the Center to revert to its prior name, risking millions of dollars that must be raised to save the Center.

The district court's ruling is wrong on Article III standing and on the merits. As described in the opening stay papers, the *ex officio* trustee lacks a

cognizable injury and instead sues to vindicate the public interest. But that is an interest that can only be vindicated by the Executive Branch. Even if the courts could reach the merits, nothing in the Center's organic legislation prohibits adopting a secondary name, and doing so is hardly unusual because the name "Kennedy" is still on the Building under either party's approach.

The equitable factors and public interest also weigh strongly in favor of a stay. On the one hand, a stay will cause no harm whatsoever to politically motivated Representative Beatty. On the other hand, the district court disregarded evidence of financial harm to the Center that would follow an injunction like the one entered. Such financial harm, and the negative downstream effects on the Center's activities, is not in the public interest. This Court should stay pending appeal the injunction and allow the Board's vote to recognize President Donald J. Trump to remain in effect.

## ARGUMENT

### A.    Appellants are likely to succeed on the merits.

The permanent injunction on appeal rests on two critical errors. First, that Appellee has standing, and second, that the Board's naming decision ran afoul of federal law. Appellants are likely to succeed in challenging both.

**1.**    To have standing in federal court, a plaintiff must show an actual or imminent "particularized and concrete harm." *Bost v. Illinois State Bd. of*

3

*Elections*, 607 U.S. 71, 79 (2026). Appellee failed to meet this burden, and her response—which relies on common law sources concerning co-trustee suits, older cases brought by co-trustees, and some recent precedents recognizing trustee standing, Opp.11-14—does not convince otherwise.

The presence of a common law cause of action is not dispositive of the standing inquiry. *Cf. Thole v. U. S. Bank N.A*, 590 U.S. 538, 544 (2020) ("[T]he cause of action does not affect the Article III standing analysis."). The simple fact that co-trustee suits have proceeded in the past, largely in state court, does not mean that this co-trustee suit can proceed now in an Article III forum. Instead, what matters is whether the harm articulated has a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). A trustee's standing to sue in federal court has before been predicated on the trustee's "legal title to the assets in the trust estate" and the "independent fiduciary obligation to sue to preserve those assets." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 304 n.2 (2008) (Roberts, C.J., dissenting); *see Thole*, 590 U.S. at 545 (stating that "trustees who are fiduciaries" "can sue other fiduciaries" if "one fiduciary were using the plan's assets as a personal piggybank" (quotation omitted)).

4

Here, trustees of the Center have "all the usual powers and obligations of a trustee in respect of all trust funds administered by it." 20 U.S.C. § 76*l*(b). As testimony from the Executive Director of the Center revealed, "trust funds" are "are private donations and revenues from performances, and those funds are used solely for programming purposes—not for capital improvements." Dkt. 45 at 2. At most, then, the above cases might support trustee standing in cases where "trust funds" are mismanaged. But "there is no reason to believe the new exterior signage to which Appellee objects was paid for using trust funds, which . . . are designated for programming uses." *Id.* Thus, the standing precedents on which Appellee and the district court rely end up supporting Appellants' position. [1]

Appellee's alternative theory of harm is that she may face liability because of the Board's actions if she does not sue in federal court. *See* Add.39. But as Appellants explained below, any such liability as to naming is entirely speculative, and certainly cannot support Article III standing. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

---

[1] The district court erred in interpreting "trust funds" to mean "all funds belonging to the Kennedy Center trust," *see* 20 U.S.C. § 76k(a) (describing as "trust funds" the "moneys, securities, or other property . . . given, bequeathed, or devised to or for the benefit of the" Center), and also misapplied precedent in concluding that a potential decline in revenue generation is equivalent to a mismanagement of trust property. Add.31-34.

The district court erred for another reason too.  As a charitable trustee, Appellee sues "in a representational capacity."  George Gleason Bogert & George Taylor Bogert, *Bogert's The Law of Trusts and Trustees* § 413 (updated May 2026).  Because the beneficiaries of the trust are the public, Appellee brings this case on behalf of the public.  Even if such a prospect is tolerable under the common law, Opp.14; *see* Add.42-44, it is not compatible with the separation of powers.  "[T]he choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch, not within the purview of private plaintiffs (and their attorneys)."  *TransUnion LLC*, 594 U.S. at 429.

**2.**     Appellants are also likely to succeed in challenging the district court's decision as to naming.  Statutory text does not preclude the Board's decision.  Appellees insist that "[b]y law, the Kennedy Center is 'designated' for 'John F. Kennedy' and no one else."  Opp.14.  But the relevant statutory text includes no such prohibition.  Instead, it provides only that the "Board shall construct for the Smithsonian Institution . . . a building to be designated as the John F. Kennedy Center for the Performing Arts."  20 U.S.C. § 76i(a).  This language does not foreclose the Board's decision to Recognize President Trump, so long as the Center remains a "national memorial to the late John Fitzgerald Kennedy."  20 U.S.C. § 76q.  Appellants have identified numerous examples of

other buildings and institutions that are referred to by a name other than the one found in the U.S. Code.  Mot.19-20.  No court, to Appellants' knowledge, has found any such example to be unlawful.

The sole statutory limitation Beatty relies upon does not forbid all signage on the exterior of the building.  20 U.S.C. § 76j(b)(1).  Instead, through that statute, Congress proscribed only "memorials" and "plaques in the nature of memorials."  *Id.*  Under the plain meaning of this phrase, the Board's decision is lawful because the addition of President Trump's name is neither a "memorial" or a "plaque in the nature of a memorial."  A "memorial" is "anything meant to help people remember some person or event, often as a "posthumous" "remembrance."  Noah Webster, *Webster's New Universal Unabridged Dictionary* 1123 (2d ed. 1983).  But including President Trump's name is not a memorial, it is a recognition of his contributions to the Center.

**B.     The balance of the harms and the public interest both lie in favor of a stay.**

The balance of harms and the public interest remain in favor a stay pending appeal.  According to the Center's Executive Director, the removal of President Trump's name will cause "irreparable harm" because it will result in

a decrease in fundraising, both now and in the future.  Dkt. 47-1 at 2.[2]  This decrease promises to destabilize "the Center's development efforts," severely impair the Center's "trust-funded artistic programming," and render the "continuation of ongoing trust-funded operations financially nonviable."  *Id.* No compensation for these stark harms will be "available at a later date, in the ordinary course of litigation," and thus they are classically irreparable.  *In re NTE Connecticut, LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022) (quotation omitted)).  And the public interest weighs in favor of a Center that is, and remains, economically viable.

There is nothing to the argument that this case was not diligently pursued. Opp.18; *cf. Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011) ("[A] delay in filing is not a proper basis for denial of a preliminary injunction.").  The stay motion was filed the day after the Board of Directors voted to seek a stay, making this motion timely.

The harms to the Center and its fundraising far outweigh any ethereal harm to Appellee.  Indeed, Appellee fails to provide any explanation of why the harms she claims will accrue during the pendency of the appeal, and she does

---

[2] Contrary to Appellee's claim otherwise, the cited declaration is in the record on appeal.  *See* Fed. R. App. P. 10(a)(1) (providing that the record on appeal includes "the original papers and exhibits filed in the district court").

8

not explain how those harms would be irreparable. *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

*/s/ Brett A. Shumate*
BRETT A. SHUMATE
  *Assistant Attorney General*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3301*
  *brett.a.shumate@usdoj.gov*

JUNE 2026

## CERTIFICATE OF COMPLIANCE

This motion satisfies the type-volume limitation in Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 1,890 words. This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Calisto MT 14-point font, a proportionally spaced typeface.

*/s/ Brett A. Shumate*
BRETT A. SHUMATE